# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMALL AXE ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMSCAN, INC; PARTY CITY HOLDCO, INC.; PARTY CITY CORPORATION; PARTY CITY OF SAN DIEGO, INC; and DM MERCHANDISING, <br><br> Defendants. | Case No.: 3:16-cv-00981-BEN-WVG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Small Axe Enterprises, Inc. ("Small Axe") has filed a First Amended Complaint, alleging patent infringement, Lanham Act violations, unfair business practices, and unjust enrichment. (First Am. Compl. ("FAC"), ECF No. 19.) Defendants Amscan, Inc., Party City Holdco, Inc., Party City Corporation, and Party City of San Diego, Inc. (collectively, the "Party City Defendants") move to dismiss the First Amended Complaint for failure to state claims upon which relief can be granted pursuant

/ / /

/ / /

1

to Federal Rule of Civil Procedure 12(b)(6).[1] (Mot., ECF No. 22.) Small Axe opposes the motion. (Opp'n, ECF No. 25) For the reasons that follow, the Court grants in part and denies in part the motion to dismiss.

## BACKGROUND[2]

Small Axe designs, manufactures, licenses, and sells accessories for drink vessels, including flexible, removable bases made from materials like neoprene. (FAC ¶ 1, 16.) Its products are designed to collect moisture and display a message or graphic. (*Id.* ¶ 1.) The products are used as promotional material at special events, such as at bars and sports events. (*Id.*) To protect its invention of these drink vessels, Small Axe applied for a utility patent on November 3, 2000. (*Id.* ¶ 3.) The U.S. Patent and Trademark Office issued the utility patent on June 17, 2003 as U.S. Patent No. 6,578,809 ("'809 Patent"). (*Id.* Ex. A.) The patent is titled "Flex Grip Mimpi Apparatus." (*Id.*) Small Axe owns all right, title, and interest in the '809 Patent. (*Id.* ¶ 24.)

The Party City Defendants are designers, manufacturers, distributors, and retailers of decorated party goods and accessories. (*Id.* ¶¶ 7-10.) Defendants make, offer to sell and sell, and import exact replicas of Small Axe's patented products without permission. (*Id.* ¶ 4.) Defendants' infringing products include the Luau Coaster Bottom and Stem Gemz brands of products. (*Id.* ¶ 4, 26) The Luau Coaster Bottoms are coasters or sleeves made of two pieces of neoprene material with decoration on the outer facing portion of the wall of the sleeve. (*Id.* ¶ 19.) The following pictures compare an embodiment of the '809 Patent and the Luau Coaster Bottoms:

---

[1] Small Axe voluntarily dismissed Defendant D.M. Merchandising, Inc. (Notice of Voluntary Dismissal, ECF No. 16.)

[2] The Court is not making any findings of fact, but rather, summarizing the relevant allegations of the Complaint for purposes of evaluating Defendants' Motion to Dismiss.

| As depicted in the '809 Patent | Luau Coaster Bottoms |



FIG. 8

(*Id.*) The complaint does not provide a description or pictures of the Stem Gemz products.

On or about May 28, 2009, Peter Gluck, Patent Procurement Counsel for Small Axe, spoke to Joe Zepf, General Counsel at Amscan, regarding the Party City Defendants' infringement of the '809 Patent by selling the Luau Coaster Bottoms. (*Id.* ¶ 20.) The complaint does not allege the outcome of those talks. Six years later, on or about July 27, 2015, Mr. Gluck wrote a letter to Mr. Zepf, seeking to secure a royalty-bearing licensing agreement. (*Id.* ¶ 21.) Amscan refused to negotiate. (*Id.*) The Party City Defendants continue to sell, offer for sale, and induce others to sell products that infringe the '809 Patent by selling the Luau Coaster Bottoms. (*Id.* ¶ 22.)

Small Axe subsequently filed a complaint in this Court on April 22, 2016. The parties attempted to settle, but negotiations failed. Small Axe thereafter filed its First Amended Complaint on October 3, 2016. The First Amended Complaint alleges four claims. The first claim for relief alleges patent infringement against all Defendants related to their sales of Stem Gemz and Luau Coaster Bottom products. The second claim for relief alleges unjust enrichment against all Defendants. The third claim for relief alleges Lanham Act trade dress violations for the high degree of similarity between Small Axe's product, the 3D Beverage Coaster, and Defendants' Luau Coaster Bottom. The trade dress claims are alleged against Defendants Amscan, Party City Corporation,

3

3:16-cv-00981-BEN-WVG

and Party City Holdco. The fourth claim for relief alleges unlawful business practices under California Business and Professions Code § 17200 *et seq.* against Defendants Amscan, Party City Corporation, and Party City Holdco. The Party City Defendants now move to dismiss all four claims for relief for failure to state plausible claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted where the pleadings fail to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). A plaintiff must not merely allege conceivably unlawful conduct but must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Patent Infringement Claim

The Party City Defendants seek dismissal of the patent infringement claim on two grounds. First, they argue that the First Amended Complaint fails to plead sufficient facts demonstrating why their products infringe the '809 Patent. Second, they contend that the allegations in the First Amended Complaint affirmatively demonstrate that the Party City Defendants cannot infringe any claim of the '809 Patent. The Court considers these arguments in turn.

/ / /

/ / /

### a. Sufficiency of Pleading

The Party City Defendants first argue that Small Axe has not stated sufficient facts to plead patent infringement. They ask the Court to adopt a pleading standard that requires a plaintiff to "plausibly allege that a defendant directly infringes each limitation in at least one asserted claim." *Scripps Research Inst. v. Illumina, Inc.*, No. 16-cv-661 JLS (BGS), 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016) ("[T]o adequately plead direct infringement, a plaintiff must allege sufficient facts to plausibly show that a defendant's accused instrumentality contains each limitation of the asserted patent claim."). Some district courts in the Ninth Circuit have adopted this standard in light of the abrogation of Form 18, a sample complaint for patent infringement in the Federal Rules that allowed for such claims to be pled at a lower standard than that espoused by *Twombly* and *Iqbal*.[3] *See, e.g.*, *Scripps*, 2016 WL 6834024, at *5; *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016); *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSx), 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016); *Cont'l Circuits LLC v. Intel Corp.*, No. CV 16-20226 PHX DGC, 2017 WL 679116, at *5 (D. Ariz. Feb. 21, 2017). Defendants argue that Small Axe does not satisfy this standard because the First Amended Complaint fails to identify even a single claim allegedly infringed.

Small Axe counters that the *Twombly* and *Iqbal* plausibility standard does not require a plaintiff to plausibly allege that the accused product practices each limitation of at least one asserted claim. They contend that such a standard requires more than *Twombly* and *Iqbal* demand and that no binding authority requires this Court to take that view. The Federal Circuit has not weighed in on this subject.

---

[3] With the abrogation of Form 18, the normal plausibility pleading standard of *Twombly* and *Iqbal* governs in patent cases. *See, e.g.*, *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-cv-1058 JLS (DHB), 2016 WL 5786936, at *3 (S.D. Cal. Oct. 4, 2016) (applying *Twombly/Iqbal* pleading standards in light of Form 18's abrogation).

This Court declines to adopt the standard advanced by the Party City Defendants because, even without applying that standard, the First Amended Complaint fails to plausibly allege patent infringement. The First Amended Complaint alleges that Defendants' Stem Gemz and Luau Coaster Bottom products infringe the '809 Patent. As to Stem Gemz, the complaint lacks factual allegations about this accused product and thus sets forth no plausible basis for infringement. Indeed, it is unclear whether Small Axe intended to plead infringement of the Stem Gemz products because, in its opposition, it states that the parties "reached a partial resolution and settlement with regard to Stem Gemz." (Opp'n at 2.)

As to the Luau Coaster Bottoms, Small Axe relies on three statements in the First Amended Complaint to satisfy the plausibility standard: (1) a description of Luau Coaster Bottoms being "coasters or sleeves made of two pieces of neoprene" (FAC ¶ 19); (2) a conclusory allegation that the Luau Coaster Bottom is an "exact replica" of the invention protected by the '809 Patent (*Id.*); and (3) an image comparison of the Luau Coaster Bottom and Figure 8 of the '809 Patent (*Id.*). Discarding the conclusory allegation that the protected and infringing products are "exact replicas," as a court must when deciding a Rule 12(b)(6) motion, Small Axe has failed to state enough facts to show that the Luau Coaster Bottoms plausibly infringe the patent. The Court has independently reviewed the '809 Patent and finds that the product description and image comparison do not plausibly claim infringement. To satisfy *Twombly* and *Iqbal*, a complaint must do more than plead facts that are "merely consistent with" a defendant's liability. *Iqbal*, 556 U.S. 662, 678. Therefore, the Court grants Defendants' motion to dismiss the patent infringement claim on the ground that it is insufficiently pled.

**b. Admissions in the First Amended Complaint**

The Party City Defendants' second ground for dismissal argues that Small Axe's admissions in the First Amended Complaint preclude finding infringement of any of the '809 Patent's claims. The three independent claims of the patent describe a device containing a "single strip" (claims 1 and 8) or a "unitary strip" (claim 4) of material. The

First Amended Complaint describes the Luau Coaster Bottoms as coasters or sleeves "made of two pieces of neoprene material." (FAC ¶ 19.) The Party City Defendants argue that because Small Axe admits the Luau Coaster Bottoms have "two pieces" of material, but the patent's independent claims only claim products with a "single" or "unitary" strip, the Luau Coaster Bottoms cannot infringe the '809 Patent.

Defendants' argument goes too far. Defendants essentially ask the Court to determine the meaning of a "single" or "unitary" strip of material at the pleading stage. But this issue is better left to claim construction later in the case. "Two pieces of neoprene material" (FAC ¶ 19) may constitute a "single strip of elastic deformable absorbing material" (claim 1), a "unitary strip of absorbent material having an open upper end, a closed lower end and cylindrical side walls disposed between the ends" (claim 4), or "a low profile cup shaped coaster means for deformably conforming to the contours of a vessel, made up of a single strip" (claim 8). Indeed, Defendants admit as much in their Motion. In their Motion, Defendants recognize that the "'809 patent specification describes an embodiment in which a single, unitary strip of material may be made by laminating an inner layer and an outer layer of material together to form a single strip before forming the cup device." (Mot. at 6 (citing '809 Patent, col. 8, lines 31-41.)) The Court declines to dismiss the patent infringement claim on this ground.

## II. Lanham Act Claim

Like the patent infringement claim, the Party City Defendants advance two grounds for dismissal of the Lanham Act claim. They first argue that the claim is barred by laches. They also contend that the First Amended Complaint fails to sufficiently plead each element of the claim. The Court addresses each argument below.

### a. Laches Defense

Laches is an affirmative, equitable defense based on a party's unexcused delay that prevents that party from asserting a claim after too much time has passed. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014). Laches is a valid defense to Lanham Act claims. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835

(9th Cir. 2002). To assert a valid laches defense, a defendant must show that (1) it suffered prejudice as a result of (2) the plaintiff's unreasonable delay in filing suit. *Id.*

Laches determinations are made with reference to the limitations period for the analogous action at law. *Id.* The Lanham Act contains no explicit statute of limitations, but the analogous limitations period is California's period for fraud, which is three years. *Id.* at 838 (citing Cal. Civ. Proc. Code § 338(d)). The limitations period runs from the time the plaintiff knew or should have known about the Lanham Act claim. The limitations period may expire "even though part of the defendant's conduct occurred within the limitations period." *Id.* "If plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable. However, if suit is filed outside the analogous limitations period, courts often have presumed that laches is applicable." *Id.* at 835 (internal citations omitted).

In this case, it is undisputed that Small Axe knew or should have known of its Lanham Act claim on May 28, 2009, when Small Axe's counsel spoke with Amscan's counsel about the Party City Defendants' infringement of the '809 Patent for selling Luau Coaster Bottoms. (FAC ¶ 20; Opp'n at 11.) The three-year limitations period expired on May 28, 2012. Because Small Axe filed suit in April 2016, a date well beyond the expiration of the three-year limitations period, this Court presumes that laches is applicable. Nevertheless, the Court must determine whether the Party City Defendants have satisfied the elements to be entitled to the laches defense. The Court concludes that while Defendants can show that Small Axe's delay in filing suit was unreasonable, they have not demonstrated that they would suffer prejudice if the suit were to continue. The Court examines both elements below.

In assessing the element of unreasonable delay, courts consider both the length of the delay and whether the plaintiff's delay was reasonable. *Jarrow*, 304 F.3d at 838. Courts also consider whether the plaintiff has proffered a legitimate excuse for the delay. *Id.* In *Jarrow*, the Ninth Circuit held that the plaintiff's seven-year delay in filing a Lanham Act claim was unreasonable where the plaintiff failed to offer a legitimate

8

3:16-cv-00981-BEN-WVG

excuse for its lengthy delay. *Id.* at 839. Similarly, Small Axe delayed filing suit for almost seven years. It contends that it had a valid reason to delay filing suit because it was engaged in settlement discussions with Defendants from 2009 through 2015. But those facts are not pled in the First Amended Complaint and are unsupported by declaration in Small Axe's Opposition. Small Axe has not offered a legitimate excuse for its delay in filing suit, and on this record, the Court finds that Small Axe's delay was unreasonable.

As to the second element, "[a] defendant may establish prejudice by showing that during the delay, it invested money to expand its business or entered into business transactions based on [its] presumed rights." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006). Another type of prejudice is evidentiary prejudice, such as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). The Party City Defendants argue that they would be prejudiced by continuation of the suit because they "made investment efforts that went into manufacture, distribution, and sale of its products. Moreover, it is expected that relevant evidence that may have supported the Party City Defendants' defenses to this action will no longer be available given Small Axe's long, unexcused delay in bringing suit." (Mot. at 9.) While these are recognized types of prejudices, the Party City Defendants do not support these contentions with a declaration or any other evidence. Beyond these conclusory statements, they fail to offer specific examples of the ways they would be prejudiced. Therefore, the Party City Defendants have not demonstrated prejudice and, accordingly, the motion to dismiss based on laches is denied. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 954 (S.D. Cal. 2016) (denying as premature motion to dismiss on laches grounds because laches is a "fact-based issue" inappropriate for resolution at the motion to dismiss stage).

/ / /

/ / /

9

3:16-cv-00981-BEN-WVG

### b. Sufficiency of Pleading

The Party City Defendants also argue that Small Axe has not plead each element of its Lanham Act trade dress claim with sufficient specificity. Trade dress is the "total image of a product, including features such as size, shape, color, texture, and graphics." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126 (9th Cir. 2015) (internal citations and quotations omitted). "To sustain a claim for trade dress infringement, [the plaintiff] must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Id.* at 1126 n.1 (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001)).

The Court agrees with the Party City Defendants. As an initial matter, Small Axe has not sufficiently put Defendants on notice of the trade dress at issue. Small Axe seeks trade dress protection for its product the 3D Beverage Coaster, but it fails to describe the look and feel of this product. *Keep a Breast Found. v. Seven Grp.*, No. 11-cv-00570 BEN (WMc), 2011 WL 3240756, at *2 (S.D. Cal. July 28, 2011) (holding that plaintiff failed to give defendant sufficient notice of claimed trade dress where complaint alleged only that "the [d]efendants have adopted the overall look and feel of products being sold bearing [plaintiff's] trademarks"). At most, the First Amended Complaint alleges that the 3D Beverage Coaster is an "exact replica" of the Luau Coaster Bottom, but the complaint nowhere explains what constitutes the features of the claimed dress. Without a sufficient description of the proposed trade dress, the Court cannot properly assess whether Small Axe has adequately alleged each element of the claim. Nevertheless, for the purposes of clarity, the Court notes that the First Amended Complaint is devoid of facts about whether the claimed trade dress is nonfunctional and includes only conclusory allegations about distinctiveness and likelihood of confusion. (*See* FAC ¶¶ 39-40.) On the basis of Small Axe's insufficient pleading of the trade dress claim, the Court grants the motion to dismiss.

### III. Unlawful Business Practices Claim

The Party City Defendants move to dismiss Small Axe's unlawful business practices claim as untimely. The statute of limitations for such claims is "four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208. Small Axe admits that it knew of the facts underlying this claim as early as May 28, 2009 (FAC ¶ 20; Opp'n at 14), yet it waited almost seven years to file this lawsuit. Small Axe argues that the claim is timely because the "business and professions code violations are ongoing" and therefore "accrue[] each day with the continuing violations." (Opp'n at 14.)

Small Axe's argument invokes two equitable doctrines that alter the usual rules governing the accrual and running of claims: the continuing violation doctrine and the continuous accrual doctrine. The California Supreme Court has held that these doctrines may apply to claims brought under § 17200 of the Business and Professions Code, such as the one here. *Aryeh v. Canon Bus. Solutions*, 292 P.3d 871, 876-78 (Cal. 2013). The Court addresses each doctrine in turn.

"The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Id.* at 875. This doctrine helps solve the problem that arises when "injuries are the product of a series of small harms, any one of which may not be actionable on its own." *Id.* at 879. Here, however, as in *Aryeh*, nothing in the First Amended Complaint warrants application of the continuing violation doctrine. Small Axe concedes that that it was aware of wrongful conduct as early as 2009. This is not a case "in which a wrongful course of conduct became apparent only through the accumulation of a series of harms." *Id.* at 880.

While the continuing violation doctrine does not apply, the continuous accrual doctrine does. "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Id.* at 875-76. "When an obligation or liability arises on a

recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Id.* at 880 (internal citation omitted).

In this case, Small Axe has alleged an ongoing unlawful act—continuous sale of Defendants' products in violation of the Lanham Act. (FAC ¶¶ 22, 48, 50.) Accepting the truth of these allegations, as the Court must on a motion to dismiss, "each alleged breach must be treated as triggering a new statute of limitations." *Aryeh*, 292 P.3d at 881. The Party City Defendants have not presented any authority to counter applicability of the continuous accrual rule. Accordingly, the Court finds that Small Axe cannot recover for unlawful business practices violations that preceded the four-year limitation period, "but [it] is not foreclosed from seeking recovery for [violations] to the extent they fall within that period." *Id.*

## IV. Unjust Enrichment Claim

The Party City Defendants argue that Small Axe's unjust enrichment claim should be dismissed because there is no claim for relief for unjust enrichment under California law. Defendants are correct that "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution,'" in California. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal citations omitted). "However, unjust enrichment and restitution are not irrelevant in California law." *Id.* "Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (quoting 44 Cal. Jur. 3d Restitution § 2).

"There are several potential bases for a cause of action seeking restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). For instance, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was obtained by fraud or is unenforceable. *Id.* "Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Id.* In such cases, the court construes the unjust
/ / /

12

enrichment claim as a quasi-contract claim seeking restitution. *Id.*; *Astiana*, 783 F.3d at 762.

Here, Small Axe does not allege that it entered into an express contract with the Party City Defendants; therefore, its request for restitution must depend on a quasi-contract claim. However, Small Axe has not alleged facts to support a quasi-contract claim. The First Amended Complaint lacks allegations that that the Party City Defendants obtained a benefit from Small Axe "by fraud, duress, conversion, or similar conduct." *McBride*, 123 Cal. App. 4th at 388. Therefore, the Court grants the motion and dismisses the unjust enrichment claim.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** the Party City Defendants' motion to dismiss. The Court grants Small Axe leave to file a Second Amended Complaint within 21 days of the signature date of this Order.

**IT IS SO ORDERED.**

Dated: April 24, 2017

Hon. Roger T. Benitez
United States District Judge